Dixie Homestead Association held a vendor's lien and mortgage on property of Charles W. Sherwood, who had obtained a fire insurance policy on the building located on the property. This policy was issued by Federal Union Insurance Company, and attached to it there was a clause to the effect that in case of loss by fire the insurance money would be payable to the Dixie Homestead Association, as holder of the mortgage, up to the extent of the debt due it. The building was partially destroyed by fire and the loss was adjusted at the agreed sum of $2540.40, and the insurance company issued its draft for that amount payable to Sherwood and the Homestead Association jointly.
Sherwood endorsed the draft and turned it over to the Homestead Association with instructions to deduct the amount due it under its mortgage claim, and to return to him the balance. The mortgage claim amounted to $943.31 and this was deducted by the Homestead Association from the proceeds of the draft. The Association then deducted from the balance in its hands $231.40, which it now alleges was claimed by Alex L. Redden, architect, as a fee for assisting in the adjusting of the fire loss.
After paying the balance to Sherwood, the Association deposited this sum, $231.40, in the registry of the Civil District Court and called upon Redden and Sherwood to assert their respective claims to the said money. In so doing the Association claims to have acted under authority of Act 123 of 1922, which in Section 1 provides: "* * * that whenever any person, firm, partnership, corporation, or association of persons shall be in possession of any money, which is claimed by two or more persons, or upon which two or more persons are claiming a lien or privilege, then such person, firm, partnership, corporation, or association of persons holding said money, may deposit the same in the registry of the District Court having jurisdiction, and shall thereafter be relieved of all liability for the payment of said money on complying with the requirements hereinafter set out."
To the petition of the Homestead Association, Sherwood filed exceptions of no cause of action and no right of action. These were overruled and Sherwood then filed a petition in which he alleged that the money deposited was the "change" due him from the draft which had been collected by the Homestead Association; that he had endorsed the draft and had delivered it to the said Association with instructions to deduct the amount due it under the mortgage and to then turn the entire balance over to him, and that the said Association was without any right whatever to withhold and deposit in court any part of the money collected by it on the said draft.
To this petition Sherwood attached a prayer that the Homestead Association be cited to appear and answer, and that there be judgment in his favor and against the association. The Association filed exceptions to this petition of Sherwood based on the following grounds:
"That there is no such procedure as set forth in said petition known to the laws of Louisiana.
"That there is a suit pending between the same parties for the same cause of action and involving the same issues, and, therefore, exceptor pleads an exception of lis pendens.
"That proper parties are not before the court because Alex L. Redden is not made *Page 196 
a party defendant in the petition of said Charles Wesley Sherwood.
"That said petition sets forth no right of action unless it be deemed an answer to the petition filed herein by the Dixie Homestead Association.
"That if the petition be considered a separate suit, then exceptor pleads to the jurisdiction and power of this court to pass on the issues set forth in the petition of said Sherwood, because the suit should be regularly allotted according to law."
No action was had on this petition of Sherwood and he filed answer in which, in effect, he admitted all of the pertinent allegations of the petition of interpleader filed by Dixie Homestead Association, but in which he denied any right to make the deposit. He claimed that the entire deposit should be turned over to him without the deduction of any costs.
Redden also appeared and made claim to the amount deposited, making the following allegations in support of his claim: That he was a building expert of the Homestead Association and, as such, was notified by that association when the loss occurred and was requested by it "to examine the loss in the interest of both association and said Sherwood"; that he examined the damaged premises and for ten or fifteen days negotiated with the insurance company for a settlement and adjustment of the loss; that Sherwood was out of the city at the time, and that therefore, he, Redden, had "dealings" with Sherwood's mother, and that when Sherwood returned he, himself, discussed the matter with Redden and had full knowledge of the services which Redden had rendered and was rendering; that the insurance company added to the amount of the adjustment $231.40 "for the distinct purpose of paying respondent's fee."
After a hearing of the evidence presented by all parties the District Court rendered judgment in favor of Sherwood, ordering the entire sum deposited to be turned over to him "without deducting any costs whatsoever", and reserving to Redden such right as he might have to assert his claim against Sherwood "in appropriate proceedings." Both the Dixie Homestead Association and Redden have appealed, the former complaining only that it should have been permitted to deduct from the money on deposit the costs paid by it in provoking this proceeding, and Redden complaining that he should have been awarded the amount deposited.
It is evident that the District Judge was of the opinion that under the facts shown, and we may add that the facts shown are identical with the allegations of the petition, there was no right in the Dixie Homestead Association to deposit the amount in court and to call on Sherwood and Redden to assert their claims to it. We say this because if the District Judge had felt that the proceeding was authorized by the statute of 1922, he must necessarily have allowed the depositor to be reimbursed the amount of its court costs, for that statute provides in Section 6 "that the applicant depositing the money shall not be required to pay any costs in the proceedings."
Sherwood's counsel argue that the statute does not contemplate that such a deposit may be made of money coming into the possession of the depositor as this money came into the possession of plaintiff. The Homestead Association and Redden, on the other hand, maintain that the statute makes no distinction whatever among the various methods by which money of one person may come into the possession of another, and they contend that since the said statute in an all-inclusive manner provides that any person in possession of "any money" which is claimed by two or more persons may make the deposit and call on the claimants to assert their rights, the Homestead Association was within its rights in resorting to the statute. They rely upon the act, itself, in support of their argument that in order that it be availed of it is not necessary that the adverse claimant or claimants assert a lien or privilege, pointing to the fact that the deposit may be made where an adverse claimant makes claim to the money or asserts a lien or privilege upon it.
We are given no authorities which touch upon the question and have found none. It is obvious that if plaintiff is correct, then whenever one person, firm or corporation has in its possession money belonging to another, a third person, by merely notifying the holder of his claim, and without judicial process, may effect the garnishment or sequestration of the money, and thus prevent its delivery to the person who may have placed it in the hands of the temporary holder.
It is true here that Redden seeks to identify his claim with the particular money in *Page 197 
the possession of the Homestead Association by asserting or claiming that by his efforts that fund had been increased. In this connection he calls attention to a clause in the insurance policy which reads as follows: "8. Architect's Fee Clause. — This insurance covers the fees of architects necessary to be incurred in repairs or reconstruction, but not to exceed the usual fees."
[1] But this clause affords no comfort to Redden for two reasons: First, if he was employed at all, and this Sherwood denies, he was not employed as an architect in repairing or reconstructing the building, but was employed as an adjuster to assist in securing settlement from the insurance company, and, therefore, even if Sherwood had employed Redden, and Redden had billed Sherwood for his services in securing the adjustment, we doubt that Sherwood could have forced the insurance company to include in its settlement the amount of Redden's bill, and, in the second place, if Sherwood had collected such an item, the amount collected by him would not have belonged to Redden — he would merely have had a claim against Sherwood for the services rendered. Even if his assertion that the insurers added $231.40 to the settlement is founded on fact, he would have no claim on that particular money; he would merely have a claim against Sherwood. In other words, his claim is not to the ownership of that particular money but is merely to his right to assert that he has a personal claim against Sherwood. We think that it was not the intention of the framers of the statute to give to one, who may have a claim against another, a right to impound in the hands of a third person money belonging to the person against whom he asserts that he has a claim and that it was intended that the claimant must base his claim on the assertion that he owns some or all of that particular money.
[2] Here the money was placed with the Homestead Association for the purpose of allowing it to reimburse itself. It would not do, under such circumstances, to permit a third person by asserting the existence of a debt due him by the owner of the money to impound that money. As we have said, the statute does not contemplate such a situation and that the District Judge so concluded. Therefore the judgment below should have merely dismissed the suit and it should not have ordered the money turned over to Sherwood. It is inconsistent to hold that the Homestead Association had no right to make the deposit, and yet to order that the deposit be turned over to one of the claimants.
Counsel for Sherwood notice this possible inconsistency and seek to defend it on the theory that wherever a court finds itself in possession of money it should deliver it to the person to whom it belongs. We do not think that that theory is applicable here, and we conclude that since the money should not have been deposited at all, it should be ordered returned to the depositor. We agree, of course, that if Redden has any claim against Sherwood he may assert it in some independent, direct proceeding.
The judgment appealed from is amended and it is now ordered, adjudged and decreed that the suit of Dixie Homestead Association be and it is dismissed at the cost of that association, and that it be permitted to withdraw the amount deposited by it in the registry of the Civil District Court. As thus amended the judgment is affirmed.
Amended and affirmed.